UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
***

EDUARDO CARBALLO CASTILLO,
RANULFO BALBUENA MARINEZ;
and RICARDO CAMPOS TOLENTINO,
                Plaintiffs,

v.

1750 ASIAN BUFFET INC., a Michigan Corporation,
d/b/a ASIAN BUFFET 7 GRILL INC., f/k/a
ASIAN BUFFET & GRILL INC.;
FUJIYA BUFFET AND GRILL, d/b/a
FUJI BUFFET AND GRILL, a Michigan Corporation,
and MAN CHEN, an individual, and
JIN ZHENG (a/k/a Jimmy), an individual,
                Defendants.

Case No. 1:17-CV-00137
Hon. Paul L. Maloney

**Oral Argument Requested**

---

Robert Anthony Alvarez (P66954)
Kristin Sage (P81173)
Agustin Henriquez, Jr. (P79589)
**AVANTI LAW, PLLC**
Attorneys for Plaintiffs
600 – 28th St. SW
616.257.6807
ralavarez@avantilaw.com

Elizabeth M. Welch (P57303)
**THE WELCH LAW FIRM, PLC**
Attorney for Defendant Fujiya Buffet, Inc.
PO Box 6262
Grand Rapids, MI  49516
616.454.7618
elizabeth@welch-law.com

Krista A. Jackson (P66303)
**KOTZ SANGSTER WYSOCKI PC**
Attorneys for Defendants 1750 Asian Buffet
           Inc., Man Chen, and Jin Zheng
40 Pearl St. NW, Ste. 400
Grand Rapids, MI  49503
616.522.6400
kjackson@kotzsangster.com

---

## DEFENDANT FUJIYA BUFFET, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

### Oral Argument Requested

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

I.  Lin Sun's Decision to Open Fuji Buffet ................................................... 2

II.  Lin Sun Possesses Complete Ownership and Control of Fuji Buffet ...................... 4

III.  Jin Zheng's Assistance to Mr. Sun................................................................ 5

ARGUMENT ........................................................................................................ 6

I.  Standard of Review................................................................................... 6

II.  The Law Regarding "Single Enterprise" Under the FLSA ...................................... 7

    A.  Unified Operation or Common Control ........................................................ 8

        (1)  Unified Operation ........................................................................ 8

        (2)  Common Control........................................................................ 10

    B.  Related Activity ........................................................................................ 12

    C.  Common Business Purpose........................................................................ 15

III.  The Relationship Between Jin Zheng and Fuji Buffet Does Not Constitute a "Single Enterprise" ............................................................ 16

    A.  There is No Unified Operation or Common Control ..................................... 17

    B.  Fuji Buffet is Not Engaged in "Related Activities" with Any Other Business ........................................................................ 18

    C.  There is Not a Common Business Purpose................................................. 19

CONCLUSION...................................................................................................... 20

## INDEX OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................6-7

*Braxton v. Eldorado Lounge, Inc.*,
    __ F. Supp. 3d __, 2017 WL 4865476 (D. Md. 2017)..........................................9

*Brennan v. Arnheim and Neely Inc.*,
    410 U.S. 512 (1973).............................................................................................8

*Brennan v. Veterans Cleaning Service, Inc.*,
    482 F. 2d 1362 (5th Cir. 1973).....................................................................8, 12-13

*Celotex Corp. v Catrett*,
    477 U.S. 317 (1986)..............................................................................................6

*Donovan v. Eastern Land Dev., Inc.*,
    723 F.2d 1549 (11th Cir. 1984)......................................................................14, 18-19

*Donavan v. Grim Hotel Co.*,
    747 F.2d 966 (5th Cir. 1984), *cert denied,* 471 U.S. 1124 (1985)........................16

*Donovan v. Janitorial Services Inc.*,
    672 F.2d 528 (5th Cir. 1982)...............................................................................11

*Donovan v. Shteiwi*,
    563 F. Supp. 118(S.D. Ohio 1983), *aff'd,* 738 F.2d 438 (6th Cir. 1984).........14-15

*Donovan v. Star Bakery, Inc.*,
    626 F. Supp. 1208 (D.P.R. 1986)....................................................................16-17

*Dunlop v. Ashy*,
    555 F.2d 1228 (5th Cir. 1977) ............................................................................10

*Garza v. Deep Down, Inc.*,
    2015 WL 5883408 (S.D. Tx. 2015) ...................................................................9-10

*Gilbert v. Freshbikes, LLC*,
    32 F. Supp. 3d 594 (D. Md. 2014) ..........................................................14, 15-16, 19

*Hodgson v. University Club Tower Inc.*,
    466 F.2d 745 (10th Cir. 1972)...............................................................................16

*Marshall v. Shan-An-Dan*,
    747 F.2d 1084 (6th Cir. 1984)..................................................................7, 10-11

*Martin v. Deiriggi*,
    985 F.2d 129 (4th Cir. 1993)...............................................................14, 16, 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................ 7

*Morgan v. SpeakEasy, LLC*,
    625 F. Supp. 2d 632 (N.D. Ill. 2007) ............................................................14, 18

*Nelson v. Long Lines Ltd.*,
    335 F. Supp. 2d 944 (N.D. Iowa 2004)............................................................13-14

*Reich v. Bay Inc.*,
    23 F.3d 110 (5th Cir. 1994)...........................................................................9, 14, 17

*Schultz v. Mack Farland & Sons Roofing Co., Inc.*,
    413 F.2d 1296 (5th Cir. 1969)...........................................................................11

*Villareal v. El Chile, Inc.*,
    776 F. Supp. 2d 778 (N.D. Ill. 2011) ................................................................13

*Wirtz v. Columbian Mutual Life Ins.*,
    380 F.2d 903 (6th Cir. 1967)...................................................................8, 15, 19

*Wirtz v. Hardin and Co.*,
    253 F. Supp. 579 (MD. Ala. 1964), *aff'd*, 359 F.2d 792 (5th Cir. 1966)...............7

## STATUTES AND REGULATIONS

29 USC § 203(r) .....................................................................................11, 13, 18

29 USC § 203(r)(1) ........................................................................................ 7

29 USC §203(s)(1) ........................................................................................ 7

29 CFR§§ 779.200 – 235 ........................................................................ passim

29 CFR §779.204(a)-(c) ................................................................................. 7

29 CFR § 779.206(a) .................................................................................... 12

29 CFR §§ 779.208 .................................................................................12, 18

29 CFR § 779.211 ....................................................................................... 12

iv

29 CFR § 779.212 ................................................................................... 15

29 CFR §779.213 ................................................................................... 13

29 CFR § 779.215 ..................................................................................... 8

29 CFR § 779.215(b) ............................................................................. 12

29 CFR § 779.217 ............................................................................. 8, 17

29 CFR § 779.219 ....................................................................... 8, 10, 17

29 CFR § 779.220 ................................................................................. 8-9

29 CFR §§ 779.222 ............................................................................... 10

29 CFR §§ 779.223 ............................................................................... 10

## RULES

Fed. R. Civ. Pro. 56(c) ....................................................................... 6, 7

## CONGRESSIONAL REPORTS

The Report of the Senate Committee on Labor and Welfare,
    Senate Report No. 145, 87th Cong. 1st Sess. 31 (1961)
    US. Code Cong. & Admin. News, p. 1660 ......................................... 13

## INTRODUCTION

This Motion for Summary Judgment is filed by Defendant Fujiya Buffet, Inc. ("Fuji Buffet").  The case brought by Plaintiffs in this action arises under the Fair Labor Standards Act ("FLSA") based upon allegations that Plaintiffs were paid improperly while working for Defendant Jin "Jimmy" Zheng at 1750 Asian Buffet Grill, Inc. and/or Hibachi Grill Supreme Buffet LLC.  (Defendants' First Amended Complaint for a Collective Action, ¶¶ 54, 67, 74, 80).  **The Complaint does not allege that Plaintiffs worked for Fuji Buffet.**  Rather, the Complaint alleges that Mr. Zheng was responsible for the day-to-day operations of the Defendant business entities named in the lawsuit and that he was "responsible for the implementation and enforcement of company wide policies and procedures."  (Plaintiffs' First Amended Complaint, ¶¶ 49, 50).  While not specifically pled, Plaintiffs are claiming that a "single enterprise" exists and that the FLSA action should therefore be expanded to all employees in the restaurants named in the Complaint.  **Fuji Buffet files this Motion because it is an entirely separate restaurant owned and managed by its owner, Lin Sun.**

Magistrate Judge Carmody ordered that discovery in this matter be bifurcated so that the parties could examine if a "single enterprise" exists under the FLSA (thus allowing Plaintiffs to then expand their lawsuit alleging wage/hour violations to Fuji Buffet, despite the fact Plaintiffs have not alleged they worked at that restaurant).   Plaintiffs have voluntarily agreed to the dismissal of 1650 Asian Grill, Inc.; Asian Hibachi Grill Inc.; and Hibachi Grill and Sushi Buffet.   Fuji Buffet is the only remaining Defendant filing a motion based upon the fact it is not a part of a "single enterprise" but is a separate independent entity entirely managed by its owner, Lin Sun.

1

Plaintiffs have the burden of establishing the existence of a "single enterprise."[1]  It is undisputed that Jin Zheng assisted Fuji Buffet's owner, Lin Sun, start his business by helping Mr. Sun locate space, overseeing construction renovations, financing part of the renovations, and helping manage the restaurant for a few weeks when it first opened.   That said, Mr. Zheng is not an owner of Fuji Buffet, does not oversee any day-to-day operations, does not hire/fire employees, is not compensated by Fuji Buffet as an owner or employee, and shares in no Fuji Buffet profits. Mr. Sun manages all aspects of his restaurant and is not working for the benefit of any other entity or person in that regard.  For these reasons, Fuji Buffet, Inc. is not part of a "single enterprise" and should be dismissed from this lawsuit.

## STATEMENT OF FACTS

### I.   Lin Sun's Decision to Open Fuji Buffet

Lin Sun was living in New York City in early 2015 working as a chef when he decided he wanted to open his own restaurant.  Mr. Sun's girlfriend's father (Yixia Liu) suggested that Mr. Sun speak to Mr. Zheng to get advice on opening a restaurant in Michigan.  Mr. Liu at that time was working for 1750 Asian Grill for Mr. Zheng as a cook in Muskegon, Michigan.  Mr. Zheng and Ms. Liu are second cousins. (Exhibit A:  Lin Sun Interrogatory Answers 5, 10; Exhibit D:  Jin Zheng Deposition, p. 25).   Mr. Liu then worked with Mr. Zheng to find a location for the new Michigan-based restaurant, and Mr. Sun viewed photos of the location online.  (Exhibit B: Lin Sun Deposition, pp. 9, 11, 17).   Mr. Sun worked with his accountant to file the necessary

---

[1] Notably, Magistrate Judge Carmody set the schedule in this matter to ensure the issue of "common enterprise" (also referred to as "single enterprise") be resolved prior to the underlying wage/hour action moving forward.  (Case Management Order, 9/28/2017; Order, 12/4/17).   She set a dispositive motion deadline in order to specifically resolve that issue.   Plaintiffs have failed to meet their burden by failing to file a motion for summary judgment and present evidence to this Court on the "single enterprise" issue.

business creation paperwork and opened his checking and credit card accounts.  (Ex A: Sun Interrog. Answer 2; Ex. C:  Sun Affidavit ¶¶ 12, 13).  Mr. Sun is the sole owner of his business (Ex. C: Lin Sun Aff., ¶ 3, Att. 1 – business filing and tax schedules stating Mr. Sun is the sole owner/shareholder).

As a result, Mr. Zheng and Mr. Liu helped Mr. Sun locate a space for the restaurant while Mr. Sun was still in New York.   (Ex. A: Sun Interrog. Answers 2 and 5; Ex B: Lin Sun Deposition, p. 9).  Mr. Sun paid Mr. Zheng an initial payment of $5,000 to Mr. Zheng for him to oversee the construction/renovations of the restaurant. (Ex. B: Sun Dep. p. 14).     Mr. Zheng oversaw the construction of the space, including mechanical, electrical, and heating work. (Ex. D: Zheng Dep. p. 27).  Mr. Zheng also assisted Mr. Sun with obtaining necessary building permits. (Ex. A:  Sun Interrog. Answers 2 and 13).  Mr. Sun, who had no credit history, needed a guarantor and thus asked Mr. Zheng to sign the restaurant's lease.  Mr. Sun has made all the rental payments for Fuji Buffet himself.   (Ex. A: Sun Interrog. Answer 2;  Ex B: Sun Dep p. 16; Ex. C:  Sun Aff. ¶14).

Mr. Sun agreed to pay Mr. Zheng a total of $50,000 to cover the construction costs and Mr. Zheng's time on the project over time – the approximate renovation costs were $30,000. The balance was provided to Mr. Zheng as compensation for his services.  (Ex. B:  Sun Dep. p. 22; Ex. D:  Zheng Dep. pp. 97-99).     Mr. Zheng essentially acted as a general contractor, recommended the restaurant design, hired the labor for renovations, and provided the financing for the construction.   (Ex. B:  Sun Dep. pp. 14-15, 22).  Mr. Sun has paid Mr. Zheng back via monthly payments (in cash) of two-to-three thousand dollars over time.  (Ex. A:  Sun Interrog. Answer 13; Ex. B: Sun Dep. pp. 14-19).   As of Mr. Sun's deposition, he still owed Mr. Zheng $20,000.  (Ex. B: Sun Dep. p. 15).  The total cost of the renovations exceeded the amount financed

by Mr. Zheng; this excess was paid for directly by Mr. Sun. (Ex. B: Sun Dep. p. 18).  Mr. Sun purchased items needed for the restaurant in person, with input from Mr. Zheng, while he was still in New York and then shipped the items to Michigan.  (Ex. B:  Sun Dep. p. 20; Ex. D: Zheng Dep. p. 46).

Fuji Buffet opened on July 6, 2016.  (Ex B: Sun Aff. ¶4; Ex D: Zheng Dep. p. 49).[2] Mr. Sun hired all the employees to work in the restaurant and is the only person who has ever been responsible for such hiring.  (Ex. A: Sun Interrog. Answer 9; Ex. B: Sun Dep. p. 22, 25).  For the first couple of weeks (Mr. Sun estimated "two to four weeks") of the restaurant's operation, Mr. Zheng assisted Mr. Sun by teaching Mr. Sun how to manage the restaurant, including how to pay workers and manage the operation.  (Ex.  A: Sun Interrog. Answer 5; Ex. B:  Sun Dep. p. 23; Ex. D: Zheng Dep. p. 23).   Mr. Zheng worked in the front of the restaurant while Mr. Sun was in the kitchen.  (Ex. C:  Sun Dep. p. 30).     During that time, Mr. Zheng signed two checks to Pepsi. Since Mr. Zheng was working in the front, he paid the Pepsi bills by signing two Fuji Buffet checks. (Ex. B: Sun Dep. p. 30, Ex D:  Zheng Dep. p. 49).  Since Mr. Sun has limited English-speaking skills, Mr. Zheng also assisted with setting up some initial vendor relationships.  (Ex. A: Sun Interrog. Answers 2 and 4).

## II.     Lin Sun Possesses Complete Ownership and Control of Fuji Buffet

After the initial few weeks of operation, Mr. Sun took over all management duties of the restaurant (with his girlfriend's father assisting with management of the kitchen).  (Ex. A: Sun Interrog. Answer 3).   Mr. Zheng has had no role at all in the business since that time beyond very occasionally assisting Mr. Sun with translating an issue with a vendor.  (Ex. D: Zheng Dep.

---

[2] Lin Sun's Deposition incorrectly states that the restaurant opened on June 6, 2018.  It is believed this is a translation error (as Mr. Sun had a Mandarin translator for the deposition).

pp. 30-31).  While Mr. Sun handles vendor/contractor issues himself, he has on occasion needed assistance given his English language proficiency is limited.  (Ex. A:  Sun Interrog. Answer 5).

Mr. Sun is entirely responsible for vendor relationships, signing contracts, managing the payment/compensation of his employees, hiring employees (with assistance from Mr. Liu), filing taxes, keeping his records, paying rent, paying bills, and managing all other functions of his business.  He is the only contact on Fuji Buffet's insurance policies, bank accounts, and credit cards.  (Ex. C:  Sun Aff.  ¶¶ 6, 8, 13-16).  He also located his accountant in New York City for the business while still living in New York. (Ex. C:  Sun Aff. ¶12).    He does not interchange his employees with any other restaurant. (Ex.  C:  Sun Aff. ¶11).    He stores records at his business, located at 4605 - 28th St. SE, and does not share any storage in his restaurant with any other restaurant.  (Ex. C:  Sun Aff. ¶7).    Finally, Mr. Sun places all the advertising for his business and does not share that advertising with any other restaurant---his advertising is for his restaurant only.  (Ex. C:  Sun Aff. ¶5).

Mr. Sun has never entered into any sort of agreement with Mr. Zheng or anyone else to operate his restaurant as part of some bigger operation or enterprise.  (Ex. C:  Sun Aff. ¶17). He is neither managed by anyone else nor does he manage any other entity.  (Ex. C: Sun Aff. ¶¶ 9-10).    Mr. Zheng has no role at all in any day-to-day business functions at Fuji Buffet.  (Ex. C: Sun Aff. ¶18).

## III.    Jin Zheng's Assistance to Mr. Sun/Fuji Buffet

Jin Zheng worked from 2010 to 2017 at 1750 Asian Buffet in Muskegon, Michigan. That restaurant was owned by his brother in 2008, his brother's girlfriend (Ping Chen) in 2010, and then her sister (Man Chen) in 2014.  (Ex. D: Jin Zheng Deposition, pp. 9-11, 13).  Mr. Zheng

also owned Hibachi Grill Supreme Buffet in Walker, Michigan from 2014 to 2016, which he sold to his girlfriend.  He still manages Hibachi Grill Supreme Buffet.  (Ex. D: Zheng Dep. p. 15-17).

While Mr. Zheng assisted Fuji Buffet with the initial launch of the restaurant by helping manage the operation for a few weeks, he has no role in hiring, firing, paying, or managing employees. (Ex. C:  Sun Aff. ¶18).    While he has on occasion helped with a vendor or contractor call if Mr. Sun has a translation issue, Mr. Sun is the primary contact for all vendors and contractors.  (Ex. A: Sun Interrog. Answer 5; Ex. C: Sun Aff. ¶15).  Mr. Zheng has no role in Mr. Sun's business and is not paid in any way other than reimbursement for the loan and compensation back to Mr. Zheng for the renovation of the restaurant. (Ex.  A:  Sun Interrog. Answer 13).  There is a record of one payment to Mr. Zheng for $2820, which was reimbursement for equipment that Mr. Sun asked Mr. Zheng to purchase for him while Mr. Zheng was in New York.  (Ex. A: Sun Interrog. Answer 13).

Mr. Sun has no knowledge of Mr. Zheng's restaurant operations other than knowing he used to own restaurants.   (Ex. B:  Sun Dep. p. 24).

## ARGUMENT

### I.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary disposition "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).  "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).    Further, when the evidence presented "is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). Finally, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 576 (1986) (citations omitted). The Plaintiff has the burden of proving the existence of an enterprise under the FLSA by a "preponderance of the evidence." *Marshall v. Shan-An-Dan*, 747 F.2d 1084, 1085 (6th Cir. 1984) (citations omitted). Additionally, "all facts and circumstances [must be examined] if defendant is an enterprise within the meaning of the [FLSA]." *Id.* at 1086 (citing *Wirtz v. Hardin and Co.*, 253 F. Supp. 579 (MD. Ala. 1964), *aff'd*, 359 F.2d 792 (5th Cir. 1966)).

## II. The Law Regarding "Single Enterprise" Under the FLSA

In order to be covered by the FLSA, an employment relationship must exist with an entity engaged in commerce with annual gross revenues of $500,000 or more. 29 USC § 203(s)(1). If multiple entities constitute an "enterprise" under the FLSA, all employees of that enterprise are entitled to the FLSA's protections. The FLSA defines "enterprise" as follows:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units ….

29 USC §203(r)(1). "Enterprise" includes a single establishment, multiunit business, and complex business organizations (where an employer operates several separate enterprises or several employers operate one enterprise). 29 CFR §779.204(a)-(c). The Department of Labor regulations specifically address the elements of "common enterprise." 29 CFR§§ 779.200 – 235.

Courts have explored extensively when to aggregate together different businesses with related activities in order to find a "single enterprise." While there are some private actions, many of the cases involve actions taken by the Secretary of Labor. The United States Supreme

7

Court ruled on the issue in *Brennan v. Arnheim and Neely Inc.,* 410 U.S. 512 (1973). In that case, a real estate management company oversaw management operations at several separately owned buildings. The Court determined that the businesses in fact were a "single enterprise" based upon the following factors: (1) related activities; (2) unified operations or common control; and (3) a common business purpose. *Id.* at 518. *See also Wirtz v. Columbian Mutual Life Ins.*, 380 F.2d 903, 906-07 (6th Cir. 1967) (insurance company and maintenance office were a "single enterprise" where maintenance of building furthered the business of the insurance company). All three factors must co-exist to justify a finding of "single enterprise." *Brennan v. Veterans Cleaning Service, Inc.,* 482 F. 2d 1362, 1366 (5th Cir. 1973).

**A.      Unified Operation or Common Control**

In order to demonstrate that a "single enterprise" exists, there must be either a finding of a "unified operation" or "common control." While both may exist, only one is required when examining the three-prong "single enterprise" test. 29 CFR § 779.215.

**(1)      Unified Operation**.

A "unified operation" exists if the entities are "combining, uniting, or organizing their performance so that they are in effect a single business unit . . . ." 29 CFR § 779.217. A "unified operation" "reference[s] particularly . . . enterprises composed of a number of separate companies . . . ." 29 CFR § 779.219. The business must be arranged or organized to "constitute a unified business system, organized for a common business purpose." 29 CFR § 779.220.

> Whether there is a unified operation of related activities will thus be primarily in those cases where the related activities are separately owned or controlled but where, through arrangement, agreement, or otherwise, they are so performed as to constitute a unified business system organized for a common business purpose. For example, a group of separately incorporated, separately owned companies, may agree to conduct their activities in such a manner as to be for all intents and purposes a single business system except for the fact that

8

ownership and control of the individual segments of the business are retained, in part or in whole, by the individual companies comprising the unified business system. The various units may operate under a single trade name; construct their establishment to appear identical; use identical equipment; sell generally the same goods or provide the same type of services, and in some cases, at uniform standardized prices; and in other respects appear to the persons utilizing their services or purchasing their goods as being the same business. They also may arrange for group purchasing and warehousing; for advertising as a single business; and for standardization of their records, as well as their credit, employment, and other business policies and practices. In such circumstances the activities may well be performed through "unified operation" sufficient to consider all of the related activities performed by the group of units as constituting one enterprise, despite the separate ownership of the various segments and despite the fact that the individual units or segments may retain control of some or all of their own activities.

*Id.*

A "unified operation" will exist when key functions are comingled. See *Reich v. Bay Inc.,* 23 F.3d 110, 115 (5th Cir. 1994) (comingled advertising, recruitment, payroll and book-keeping resulted in a finding of a "unified operation"). Even cases were there is some intermingling will not necessarily result in a finding of a "single enterprise." For example, in *Braxton v. Eldorado Lounge, Inc.*, __ F. Supp. 3d __, 2017 WL 4865476 (D. Md. 2017), the plaintiffs claimed that two night clubs and an individual who owned one club entirely and half of the other club were a "single enterprise." The two clubs shared a bookkeeper, shared an employment application (which referred collectively to both clubs), and trained employees at one club to work at the other. The court concluded that despite "related activities" existing, it could not "on the evidence presented, which must be construed in the light most favorable to defendants," conclude, as a matter of law, that they were either a unified operation or under common control. *Id.* at *11. The court noted with respect to the individual owner that he may have been merely an investor in a separate enterprise which shared personnel and resources. *Id. See also Garza v. Deep*

9

*Down, Inc.*, 2015 WL 5883408, *4 (S.D. Tx. 2015) (noting plaintiff "does not even allege that the Defendants have an agreement (formal or otherwise) to conduct or coordinate their activities in a unified fashion" and facts showed no overlapping ownership, no overlapping officers, and no shared warehousing, bookkeeping, advertising or office space).

## (2) Common Control

In contrast to a "unified operation," "common control" is found "[w]here the related activities are performed by a single company, or under other single ownership," and thus the issue of a "unified operation" does not need to be decided. 29 CFR § 779.219. The test for "common control" is " 'whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise.' " *Marshall v. Shan-An-Dan*, 747 F.2d 1084, 1086 (6th Cir. 1984) (citing *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977) (citations omitted). Where there is common ownership, "common control" will exist so long as the ownership can exert control via such ownership, and control will exist if ownership is vested in a single person, family or business. 29 CFR §§ 779.222-223.

In *Marshall*, a case involving a franchisor and franchisee, the Court overturned a magistrate's ruling, finding that there was no "single enterprise" since there was no common control between the two business entities:

> [F]irst, the entities are not only in separate locations, they in
> different states; second, no daily recordkeeping or safekeeping
> activities are conducted by one entity for the other; and third, there
> was no demonstrated close and continuous relationship between the
> two managers of the franchisor-franchisee businesses.

*Marshall*, 747 F.2d at 1087. The court noted that "practical and realistic factors" must be examined. *Id.* Ultimately, the court in *Marshall* rejected the argument that a franchise agreement containing restrictions on products, prices, profit and management was enough to constitute a

"single enterprise."  Instead, it concluded that there was <u>not</u> a "single enterprise" since there were

entirely different stockholders, directors, officers, and there were no shared managers, auditors, or

common facilities for storage or record-keeping."  *Id.* at 1087, 1089.   The court, in an analysis of

the Congressional Record, also noted that the FLSA itself did not contemplate coverage of

franchise operations.  *Id.* at 1088 (citation omitted).   The FLSA section regarding franchise

operations states as follows:

> [A] retail or services establishment which is under independent
> ownership *shall not be deemed* to be so operated or controlled as to
> be other than a separate enterprise by reason of any arrangement,
> which includes, but is not necessarily limited to, any agreement (A)
> that it will sell, or sell only, certain goods specified by a particular
> manufacturer, distributor or advertiser, or (B) that it will join with
> other such establishments in the same industry for the purpose of
> collective purchasing, or (C) that it will have the exclusive right to
> sell the goods or use the brand name of a manufacturer, distributor,
> or advertiser within a specified area, or by reason of the fact that it
> occupies premises leased to it by a person who also leases premises
> to other retail or service establishments.

29 USC § 203(r).

Courts have found the existence of single enterprise due to "common control"

primarily when an owner has the power to make decisions for all in the group.    In *Donovan v.*

*Janitorial Services, Inc.,* three companies were held out to the public as one entity performing

maintenance, pest control, and trash removal.   *Donovan v. Janitorial Services Inc.,* 672 F.2d 528

(5th Cir. 1982). The companies, which shared office space, staff and telephones, were deemed by

the court to be a "single enterprise."  The court determined that the businesses (garbage collection

and maintenance services) were complementary to each other and that "ultimate authority over the

affairs" vested with one person.  *Id.* at 529-30 (citing *Schultz v. Mack Farland & Sons Roofing*

*Co., Inc.,* 413 F.2d 1296 (5th Cir. 1969)).

B.    **"Related Activity"**

In order to demonstrate the existence of a "single enterprise," Plaintiff must also show that the business/individuals at issue engaged in "related activities."  "Related activities" does not explore the issue of ownership but rather whether activities are performed "for a common business purpose through unified operation or control." 29 CFR § 779.215(b).

The regulations expand upon "related activities" as follows:

> [A]ctivities will be regarded as "related" when they are the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business. So also, all activities which are performed as a part of the unified business operation will be "related," including, in appropriate cases, the manufacturing, warehousing, and distribution of its goods, the repair and maintenance of its equipment, machinery and its premises, and all other activities which are performed for the common business purpose of the enterprise.

29 CFR § 779.206(a).  Other examples or "related activities" set forth in the regulations include promotion activities, maintenance and repair services, delivery services, recruitment/training, and employee benefit and insurance plans. 29 CFR §§ 779.208(b)(c)(f)(h)(j).  Common ownership of the entities alone is not enough to make the entities "related."  Rather, there must be "a reasonable relationship of all the activities to a single business purpose…."  29 CFR § 779.211.   Thus, if a business has a separate and unrelated business purpose, it will not satisfy the "related activity" prong of the "single enterprise" test.

In *Brennan v. Veteran Cleaning Service*, 482 F.2d 1362 (5th Cir. 1973), the defendant was the owner and president of Veterans Cleaning and Roto Rooter.  He was also the secretary of Rent-A-Maid, owned mostly by his son.  The defendant was in fact the operating manager of all three entities.   A centralized location was used for bookkeeping, billing, and

ordering. The businesses also had common employees. Even company trucks were interchanged sometimes in emergencies. While the defendant admitted "common control," he denied that the third prong of "single enterprise' was satisfied----i.e. that they were "related activities . . . for a common business purpose." *Id.* at. 1366.

The *Brennan* court analyzed the legislative history behind Section 203(r) (which defines "enterprise" as "*related* activities performed (either through unified operation or control) by any person or persons for a common business purpose...." 29 USC § 203(r) (emphasis added). The court, delved into the meaning of the word "related":

> "Within the meaning of this term, activities are "related" when they are the *same or similar* such as those of the individual retail or service stores in a chain, or departments of an establishment operated through leasing arrangements. They are also "related" when they are *auxiliary and service activities* such as central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services. Likewise, activities are "related" when they are *part of a vertical structure* such as manufacturing, warehousing, and retailing a particular product under unified operation or common control for a common business purpose."

*Brennan*, 482 F.2d at 1366 (quoting The Report of the Senate Committee on Labor and Welfare, Senate Report No. 145, 87th Cong. 1st Sess. 31 (1961) US. Code Cong. & Admin. News, p. 1660) (emphasis added by the *Brennan* court).

The *Brennan* court then found that the day-to-day activities of the operations –given the extensive interchange of operations of all the businesses-- indeed did constitute shared "auxiliary and service activities" under the FLSA and that a finding of "single enterprise" was appropriate. *See also Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778 , 792 (N.D. Ill. 2011) (finding restaurants were engaged in "related activities" because husband and wife owners served the public using the same menu, operated in the same manner, and operated under the same name); *Nelson v. Long Lines Ltd.*, 335 F. Supp. 2d 944, 966 (N.D. Iowa 2004) (a holding company and resort

13

rental company with common ownership had "common control" but they were not in same vertical structure and thus not "related"). "When different business entities are involved, the critical inquiry is whether there is operational interdependency." *Donovan v. Eastern Land Dev., Inc.,* 723 F.2d 1549, 1551 (11th Cir. 1984) (no "single enterprise" found since hotel obtained no advantage from lounge in hotel and each had its own tax filings, books, and management). "Whether activities are related 'will depend in each case upon whether the activities serve a business purpose common to all the activities of the enterprise, or whether they serve a separate and unrelated business purpose.'" *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 647-48 (N.D. Ill. 2007) (finding two bars owned and managed by same person and which were promoted/advertised as "sister organizations" satisfied the "related activity" element and thus were a single enterprise).

"Related activity" can be shown through a business performing similar functions (ie, similar products and similar clientele) and if the operation is for a common purpose. *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 604 (D. Md. 2014) (finding bicycle company and retailers were "single enterprise" based upon: (1) "related activities" in sales and clientele, (2) "common control" via one owner, and (3) "common business purpose" due to centralized ownership and related activity). *See also Martin v. Deiriggi*, 985 F.2d 129, 133 (4th Cir. 1993) (motel and restaurant had coordinated and interdependent operations---including operating in the same location, shared accounting, intermingled financial and tax records, and shared employees--- and thus were related); *Reich v. Bay, Inc.,* 23 F.3d 110 (5th Cir. 1994) (equipment leasing company and labor-staff company were engaged in "related activity" where they shared office space under one name, shared officers/directors, and shared bookkeeping, payroll, recruitment, advertising, and had one person managing records). In *Donovan v. Shteiwi*, 563 F. Supp. 118, 122 (S.D. Ohio

14

1983), *aff'd,* 738 F.2d 438 (6th Cir. 1984) the court noted that two restaurants (Gold Star Chili and Caruso's Ristorante) were not engaged in "related activities."   While both had a common ownership interest and served food, the court noted the they did not have joint promotions, joint inventory or purchasing, or joint billing.

### C.   "Common Business Purpose"

The regulations state that a single person can own multiple entities with a "common business purpose" but also that a single person can own multiple retail stores that are in fact not for a "common business purpose." 29 CFR § 779.212.  Additionally, the regulations provide:

> Generally, the term "common business purpose" will encompass activities whether performed by one person or by more than one person, or corporation, or other business organization, which are directed to the same business objective or to similar objectives in which the group has an interest. The scope of the term "enterprise" encompasses a single business entity as well as a unified business system which performs related activities for a common business purpose. What is a "common business purpose" in any particular case involves a practical judgment based on the facts in the light of the statutory provisions and the legislative intent. The answer ordinarily will be readily apparent from the facts. The facts may show that the activities are related to a single business objective or that they are so operated or controlled as to form a part of a unified business system which is directed to a single business objective. In such cases, it will follow that they are performed for a common business purpose. Where, however, the facts show that the activities are not performed as a part of such enterprise but for an entirely separate and unrelated business, they will be considered performed for a different business purpose and will not be a part of that enterprise.

29 CFR §779.213.   The mere goal of making a profit is not a "common business purpose." *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967).    The businesses must have "the same business objective" or similar objectives in which the group has an interest.  "[F]actors such as operation, related activity, interdependency, and a centralization of ownership or control can all indicate a common business purpose."   *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594,

604 (D. Md. 2014) (citing *Donavan v. Grim Hotel Co*., 747 F.2d 966, 971 (5th Cir. 1984), *cert denied by Grim Hotel Co. v. Brock*, 471 U.S. 1124 (1985)).  There is a "close relationship" between the "related activities" element and the "common business purpose" element. *Id.* (quoting *Martin v. Deiriggi*, 985 2d 129, 133 (4th Cir. 1993)).

In contrast, when businesses operate independently and serve different clients, courts have found there is not a "single enterprise" as there is no common business purpose.  For example, in *Hodgson v. University Club Tower Inc.,* 466 F.2d 745 (10th Cir. 1972), a hotel and two apartment buildings owned by the same company (and thus under "common control") were found by the court to not constitute a "common enterprise" as they served different clients and did not have a common business purpose. *Id.* at 747-48.

## III.   The Relationship Between Jin Zheng and Fujiya Buffet Does Not Constitute a "Single Enterprise"

All three of the "single enterprise" factors must be proven by Plaintiffs to prevail. *Donovan v. Star Bakery, Inc.,* 626 F. Supp. 1208 (D.P.R. 1986) is instructive.  In that case, a bakery and a restaurant were found not to be a "single enterprise" based upon a full review the facts:

- There was no evidence of personnel interchange;
- Management was separate;
- Hiring and firing was done separately;
- There was no intermingling of funds between corporations;
- Separate records for profits, expenditures, and personnel were maintained;
- Each corporation paid salaries from its own funds;
- Each corporation owned and maintained its own equipment; and
- Purchases were made from local distributors separately and independently (with some use of the same distributors).

*Id.* at 1211-12.  Despite some overlapping ownership and even some overlapping menu items, the court found there was not a "single enterprise."    It determined that there was neither common control nor a unified operation.  It also found that:

> [T]he two corporate defendants are not operated in order to improve the public image of the other. They do not facilitate internal operations and do not further the business of the other. These two corporate defendants operate in a separate and independent fashion. Physically, operationally and administratively they are distinct and separate with no intermingling in those areas. . . . Economically, they are also independent from each other as there are no pooling of profits.

*Id.* at 1215. In the instant case, the lack of intermingling operations and separateness of the operations are even stronger than those set forth in *Donovan v. Star Bakery.*

### A.      There is no Unified Operation or Common Control

In the instant case, there are no facts present with respect to Fuji Buffet to suggest any "unified operation" or "common control." Per 29 CFR § 779.219, "unified operations" applies to separate companies acting as an enterprise. "Common control" refers to entities with related activities performed by a single company/person or under single ownership. *Id.* In this case, there is neither evidence of common ownership nor is there evidence of "common control"--- there is no individual other than Mr. Sun who has control over his own restaurant.

Further, there is no evidence presented of a "unified operation." In order to be a "unified operation," entities are "combining, uniting, or organizing their performance so that they are in effect a single business unit . . . ." 29 CFR § 779.217. In every case that analyzes the issue of "unified operation," the facts demonstrate clear comingling of business functions with another entity or person. *See, e.g., Reich v. Bay Inc.,* 23 F.3d 110, 115 (5th Cir. 1994). The facts in this case indicate that Fuji Buffet is entirely owned by Mr. Sun and that he keeps the books, files the taxes, pays the rent and bills, opened and maintains the bank accounts and credit cards, maintains vendor relationships, places his own advertising for only his business, and hires his own employees. (Ex. C: Sun Aff. ¶¶ 5, 6, 8, 13-16).

Significantly, the FLSA explicitly states that franchise operations will not be considered an "enterprise" despite coordination of brand name, purchasing, and operations in such entities. 29 USC § 203(r).  Certainly in the instant case, an experienced restaurant-owner consulting with someone starting their own restaurant does not rise to the level of "enterprise" when the facts show far less overlapping facts than in the case of a franchise.

At most, the evidence shows that Mr. Zheng consulted to assist Mr. Sun start Fujiya and helped finance/oversee renovations.  (Ex. B:  Sun Dep. pp. 14-15, 22).  Mr. Zheng helped train Mr. Sun on running the restaurant. (Ex.  A: Sun Interrog. Answer 5).   After that limited start-up time period, Mr. Sun has managed every aspect of his business and has been paying back the loan for the construction made by Mr. Zheng.  (Ex. A:  Sun Interrog. Answer 13; Ex. B: Sun Dep. pp. 14-19; Ex. B:  Sun Aff. ¶10).  The record contains no evidence of an effort of Fuji Buffet to work with or coordinate with any other person or entity with effect of being a "single business unit." In fact, Fuji Buffet has never worked with any other person or entity in an effort to be a "single business unit."   (Ex. C:  Sun Aff. ¶17).   Mr. Zheng does not share in profits, is not compensated by the business as an employee, and is in no way part of the business's day-to-day operations. (Ex. A:  Sun Interrog. Answer 13; Ex. C: Sun Aff. ¶ 3, 18).  Based upon the foregoing, Fuji Buffet is not a part of a "unified operation."

**B.**     **Fuji Buffet is Not Engaged in "Related Activities" with Any Other Business**

"Related activities" includes "auxiliary services" such as "central office and warehousing activities and bookkeeping, auditing, purchasing, advertising and other similar services…"  29 CFR § 779.208.    In order to be "related," the activities have to be serving a business purpose common to the enterprise. *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 647-48 (N.D. Ill. 2007).  There also must be some degree of operational interdependency and

18

advantage for the examined "enterprise." *Donovan v. Eastern Land Dev., Inc.,* 723 F.2d 1549, 1551 (11th Cir. 1984). In the instant case, while the Defendants are all Asian buffet restaurants, there is no evidence of "related activity" designed to serve a bigger enterprise. There is simply no overlap of functions between the businesses. While Mr. Zheng manages and has managed other restaurants, and he managed Fuji Buffet for a few weeks when it opened, there is no evidence of overlapping services between the various entities that Mr. Zheng served and Fuji Buffet. Fuji Buffet operates completely independently, is not a part of any horizontal or vertical structure , and is not part of any "related activity." Finally, there is no advantage demonstrated by the facts to either Mr. Zheng or any restaurants where Mr. Zheng worked (or any other named restaurant Defendant) by virtue of Mr. Zheng assisting Mr. Sun with the opening of his business.

### C.  There is Not a Common Business Purpose

While one could argue that both Mr. Zheng's previous restaurants and Fujiya Buffet both serve food Asian-Buffet style, certainly the law requires more for there to be a "common business purpose" (otherwise all Asian buffet restaurants would have a "common business purpose"). Further, the courts have clearly stated that "making a profit" is not a "common business purpose." *Wirtz v. Columbian Mut. Life Ins. Co*., 380 F.2d 903, 907 (6th Cir. 1967). An examination of "common business purpose" usually involves significant overlap with "related activities" to make that determination. *Martin v. Deiriggi*, 985 2d 129, 133 (4th Cir. 1993). Interdependency of an operation with another is a typical feature of cases where there is a "common business purpose." *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 604 (D. Md. 2014).

In this instance, Fuji Buffet has its own clientele in Grand Rapids, no evidence has been presented that its objective is to serve another restaurant's clientele, and it operates

completely independently from any other restaurant.   It is not dependent upon any other person or business to operate.   While Fuji Buffet has a loan payable to Mr. Zheng for the construction costs and Mr. Zheng signed the lease as a Guarantor, those factors do not indicate a "common business purpose." Rather, they are indicative of a friend helping a business get started.   The help is not coordinated in any broader way with any other entity.

As with the examination of "related activities," the extensive facts outlined above demonstrate that Fuji Buffet is a stand-alone operation completely managed by Mr. Sun.   As a result, Plaintiffs cannot demonstrate a "common business purpose" and thus cannot establish a "single enterprise."

## CONCLUSION

The allegations in this matter stem from wage/hour claims from employees who worked for Mr. Zheng.   To open this lawsuit up to include Fuji Buffet and its employees ignores the economic reality of Fuji Buffet's operation:  it is an entirely separate restaurant that is not linked to any other restaurant or entity.    Plaintiffs have the burden of establishing a "single enterprise."   That burden cannot be met given the undisputed facts in the record.   For the reasons set forth in this Brief, Defendant Fujiya Buffet, Inc. should be dismissed from this lawsuit.

THE WELCH LAW FIRM, PLC
Attorney for Defendant Fujiya Buffet, Inc.

Dated:  March 30, 2018

/s/ *Elizabeth M. Welch*
Elizabeth M. Welch
The Welch Law Firm, PLC
PO Box 6262
Grand Rapids, MI  49516
616.454.7618
elizabeth@welch-law.com